Anastasie Irene Warden Cittadini v. Commissioner.
Cittadini v. Commissioner
Docket No. 108757.
United States Tax Court
1943 Tax Ct. Memo LEXIS 445; 1 T.C.M. (CCH) 606; T.C.M. (RIA) 43083; February 15, 1943
*445 C. Walter Randall, Jr., Esq., for the petitioner. Harry L. Brown, Esq., for the respondent. HILL Memorandum Opinion HILL, Judge: This proceeding is for the redetermination of a deficiency in income tax for the year 1939 in the amount of $26,625.93. The issue involves a bad debt deduction in the amount of $100,000, claimed by petitioner and disallowed by respondent. [The Facts] Petitioner is a resident of Philadelphia, Pennsylvania, and filed her individual income tax return for the year 1939 with the collector of internal revenue at Baltimore, Maryland. In 1930 petitioner was in Paris, France, and on November 16 of that year she loaned $100,000 to one Mark McCune, who was also at that time in Paris. McCune was engaged in speculating on the New York stock market, and wanted the money to "save" his brokerage account. Petitioner was then engaged to marry Mark McCune, but some time thereafter the engagement was broken. At the time of the transaction the matter of repayment was discussed but no specific date for repayment was fixed, nor was there any agreement for the payment of interest. McCune agreed that as soon as his account with the bank was "straightened out" the debt would *446 be paid. Because of the fact that petitioner was engaged to marry Mark McCune, he stated to petitioner that it would be very embarrassing to him to receive directly from her a check for $100,000; also petitioner desired to transfer the money in such manner that the foreign colony in Paris would not know that she was lending money to her "future husband." Accordingly, petitioner requested Raymond McCune, brother of Mark, to act as an intermediary, which he did. The check for $100,000 was made payable, and was delivered by petitioner, to Raymond McCune, who was also then residing in Paris. He endorsed the check and transmitted it to his secretary in New York City, who deposited the amount to the credit of Mark McCune's account with each of two brokerage firms. On the same date, November 16, 1930, petitioner, at the request of Raymond McCune, addressed a letter to him in which she stated that the check for $100,000 was in payment of her indebtedness to him. Such statement was not a fact. Petitioner was not then nor ever had been, indebted to Raymond McCune. During the period 1931 to 1939, inclusive, petitioner made attempts to collect the debt owing to her from McCune. In the fall *447 of 1931, about October, petitioner took the matter up with her American attorney, who was then in Paris. He in turn consulted his Paris correspondents for the purpose of collecting the money, but their efforts were unsuccessful. The American attorney returned to the United States, taking the check and other papers with him. An investigation of the two McCune brothers was then made in this country, and, in the circumstances disclosed, the attorneys decided to sue them both. On or about January 22, 1935, an action was instituted in the Supreme Court of the State of New York, styled "Anastasie Irene Warden, plaintiff, against Mark McCune and Raymond McCune, defendants." The complaint was verified by one of petitioner's attorneys, and alleged that prior to November 16, 1930, the defendants had conspired to defraud her of the sum of $100,000; that pursuant to such conspiracy the defendants on that date obtained from petitioner the sum of $100,000, no part of which had been repaid, and demanded judgment against the defendants, and each of them, in the sum of $100,000, together with interests and costs. Petitioner did not direct the form of action to be brought; she merely stated the *448 facts to her attorneys and requested them to collect the money. An investigation had been made by the attorneys prior to 1935, but action was not sooner instituted because Mark McCune was abroad until that year, and service was not had on Raymond McCune until about a year and a half later. In 1929 Mark McCune had probably a million and a half dollars worth of assets; early in 1930, he also had a considerable amount of assets but later in 1930, he was practically wiped out. Some time between 1934 and 1936, he had approximately $100,000; in 1937, he did not have anything. Mark McCune was living in Paris, France, at the time of the transaction here involved, and remained there for some two or three years afterwards; then he returned to New York, where he lived off and on for several years. He was in Florida for the larger part of the last year of his life, and was taken by airplane to San Francisco, California, where he died in October or November, 1939. McCune died insolvent; he left no funds with which to pay burial expenses, nor the cost of his transportation from Florida to San Francisco, and had been furnished money for living expenses by his brother and sister for two or three *449 years prior to his death. The action pending in the New York court, above referred to, was discontinued without costs by stipulation of the parties dated December 27, 1939. Petitioner charged off the debt in controversy by claiming a deduction therefor in her income tax return for the taxable year, since she kept no books of account. Respondent disallowed the deduction with the following explanation: (b) The item of $100,000 claimed as a deduction from gross income * * * and alleged to represent a bad debt, is denied for the reason that there has been no satisfactory showing that there was at any time an existing debt, nor, if existent, that the debt was ascertained to have become worthless in 1939. [Opinion] Section 23 (k) (1), Internal Revenue Code, as amended by section 124, Revenue Act of 1942, (effective in respect of taxable years beginning after December 31, 1938), provides that in computing net income there shall be allowed as deductions, among other things, "debts which become worthless within the taxable year." Thus, the former requirements of "ascertainment of worthlessness" and "chargeoff" within the taxable year have been eliminated, and, from the effective *450 date of the amendment, a taxpayer is required to establish only two facts, namely, (1) that there was an existing debt, and (2) that such debt became worthless within the taxable year. In the instant proceeding, respondent's contention that there was not at any time an existing debt can not, we think be sustained in view of the evidence adduced by petitioner on this point. Petitioner, personally, testified that the transaction was a bona fide loan, and that Mark McCune specifically agreed to repay the amount. Also, Raymond McCune, the intermediary through whom the transaction was consummated, testified that his brother orally acknowledged to him that it was a loan to be repaid, and further that he acknowledged the loan in a letter written to petitioner, which Raymond read. The fact that no due date was fixed for repayment, or that there was no agreement for payment of interest, is immaterial; the same might be true in respect of a loan evidenced by a promissory note payable on demand without interest. The inference that the transaction was a gift, which respondent seeks to draw from the fact that petitioner was at that time engaged to marry Mark McCune, in our opinion must fail in *451 the light of the positive and uncontradicted evidence above referred to. Accordingly, we hold that there was an existing debt. The second fact which petitioner has the burden of proving is that the debt became worthless within the taxable year. The evidence satisfactorily establishes that petitioner's claim was without value in October or November 1939, when Mark McCune died insolvent, but in order to show that the debt became worthless within the year 1939, it must also appear that the debt had at least some value at the beginning of that year, as otherwise it necessarily would follow that it became worthless some time prior to the taxable year. In such event, it would be immaterial under the statute that such state of worthlessness continued up to the date of the debtor's death. Petitioner has failed to prove that the debt had any value at the beginning of the taxable year. The evidence indicates that Mark McCune, the debtor, was a speculator on the stock market. So far as shown, that was his only business occupation. He was up and down financially. According to the testimony of his brother, Paymond McCune, Mark McCune was worth probably a million and a half dollars *452 in 1929, and had a considerable amount of assets early in 1930; in the later part of 1930, he was practically wiped out. Some time in the period 1934 to 1936, he had approximately $100,000, but again in 1937 he did not have anything, and from that date on until his death in 1939, he lived off his brother and sister. Apparently he did not have sufficient income to pay his personal living expenses, and he died without funds to pay burial expenses. Shortly before his death, he was taken from Florida to California in a dying condition. These facts are not inconsistent with the inference that during the last two or three years of his life Mark McCune had ceased to carry on his stock market operations, and was not otherwise gainfully employed. It might also be inferred that during this period, or at least the latter part of it, he was in ill health and possibly unable to engage in business activities. Whatever the facts may have been, if petitioner's debt had any potential value at the beginning of the taxable year, on the theory that temporary insolvency of an individual debtor is not sufficient to establish worthlessness of the debt (cf. Lee Live Stock Commission Co., 7 B.T.A. 532, 539, *453 and H.B. Moore, 8 B.T.A. 749, 755, petitioner has the burden of proving such fact, and this she has wholly failed to do. The deficiency determined by respondent is approved. Decision will be entered for respondent.